## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **VEHICLE MARKET RESEARCH, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09-2518-JAR** |
| | ) | |
| **MITCHELL INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is a dispute between Plaintiff Vehicle Market Research, Inc. ("VMR") and Defendant Mitchell International, Inc. ("Mitchell") over whether Mitchell owes VMR royalties under a software development contract. VMR brought claims against Mitchell for breach of contract and breach of the implied covenant of good faith and fair dealing under California law; Defendant denied that it breached the contract and violated the covenant of good faith and fair dealing and sought a declaratory judgment. Mitchell asserted the affirmative defense of judicial estoppel, arguing that VMR's sole shareholder, John Tagliapietra, failed to disclose the breach of contract claim and the value of his VMR stock during the course of his personal bankruptcy proceedings.

The parties filed cross-motions for summary judgment (Docs. 83, 85). On May 24, 2012, the Court conducted an evidentiary hearing on the judicial estoppel defense, and heard oral argument on the merits. On June 7, 2012, the Court granted Defendant's motion for summary judgment on the judicial estoppel defense based on Tagliapietra's failure to disclose the value of his VMR stock in the bankruptcy proceeding. The Court found that Tagliapietra's contention

that the stock was worth nothing in 2005 is at odds with VMR's position in this case that, under the contract, it retained rights to valuable preexisting materials that Mitchell allegedly used in developing its own software.

Before the Court are Plaintiff's Motion to Alter or Amend Judgment (Doc. 112) and Defendant's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 and Local Rule 11.1 (Doc. 116). VMR argues that the Court erred in finding that Tagliapietra's damages claim in this case is inconsistent with his 0.00 valuation of VMR stock at the time he filed his Chapter 7 bankruptcy case. Specifically, VMR disavows that the preexisting materials and concepts had any value outside of their use by Mitchell that would affect VMR's stock value. VMR argues that the Court's Order misconstrues its claims in this case, and argues further the Court applied judicial estoppel on grounds not raised by Mitchell. Mitchell's motion for sanctions argues that VMR's motion to alter or amend violates Rule 11 because it asserts that VMR had no right to preexisting materials under the contract, a position contrary to the language in the contract, and to VMR's previous contentions in this case. Mitchell asks the Court to strike the motion to alter or amend and to award it attorneys' fees and costs as Rule 11 sanctions. The Court has considered the parties' submissions and, as stated in detail below, denies both motions.

## I.      Background

The parties entered into a software development contract on March 20, 1998. Paragraph 8.1 of the Agreement provides:

> **8.1 Ownership of Materials and Intellectual Property**: During the term of this Agreement and upon completion of all payments due, termination, cancellation, or expiration of this Agreement, but subject to the provisions of Paragraph 28 hereof, VMR shall immediately turn over all items (including the TLSS Product,

Work Product or work in process) in its possession which were prepared pursuant to this Agreement or made available to VMR . . . used in developing the TLSS Product and Work Product and all rights, title, and interest or other materials furnished to VMR by MITCHELL during the course of VMR performing Professional Services, and all copies thereof. . . .

Notwithstanding the foregoing, VMR retains all right, title and interest in, and to any pre-existing software tools, utilities, concepts, techniques, text, research or development methods that VMR used in or applied to the development of the TLSS Product (the "Pre-Existing Materials").

VMR hereby grants MITCHELL an exclusive right and license to modify, adapt, reproduce, use and distribute the Pre-existing Materials as part of the TLSS-Product and as part of any adaptations, updates, enhancements or other derivative works based thereon.

The Exit Clause in Paragraph 29 of the Agreement provides that "Where MITCHELL terminates this Agreement as provided in this Paragraph, MITCHELL shall relinquish its ownership interest in the Work Product (but not Confidential Information), if any, to the date of termination, and VMR may freely use the Work Product (but not the Confidential Information) in the operation of its business."[1]  The parties agree that the contract was never terminated.

Schedule A provides for payment by Mitchell to VMR under the Agreement, including a royalty on "Eligible Revenue until a maximum cumulative total of $3,500,000 is paid out based upon the following royalty rate."  In 2002, the parties executed an Amendment to the Agreement, increasing the maximum cumulative royalty payment to $4,500,000.

The parties agree that Mitchell distributed the TLSS product for several years and paid VMR royalties on that product.  Sometime in late 2005, Mitchell developed its own product—the iNTOTAL product—which VMR contends utilized the "concepts" of TLSS and

---

[1]Work Product is defined in paragraph 6.0 of the Agreement as "including without limitation, software, computer programs (in Object and Source code formats) techniques, systems, methodologies, reports and records and other materials prepared for MITCHELL by VMR."

3

the VMR prototype.  VMR claims damages based on unpaid royalties for Mitchell's new

product.

On February 15, 2012, Judge Rushfelt granted Mitchell leave to file an Amended Answer

asserting the affirmative defense of judicial estoppel; Mitchell filed the Amended Answer the

next day.[2]  Mitchell alleged that VMR is a shell company devised to collect royalties under the

Agreement, and "to hold ownership in any intellectual property retained by VMR in connection

with its work with Mitchell on a total loss product (the "Pre-existing Materials")."  Tagliapietra,

its sole shareholder and alter ego, filed for Chapter 7 bankruptcy protection on October 14, 2005.

In his bankruptcy schedules, he listed his 1000 shares of VMR stock and assigned its value at

"0.00."  Mitchell alleged two distinct grounds for its judicial estoppel claim:

> 8. Mr. Tagliapietra did not include in the Petition the claim he
> believed that VMR had against Mitchell for ceasing to pay
> royalties under the 1998 Agreement, i.e. the claim that
> VMR is asserting in this lawsuit.

> 9. Mr. Tagliapietra did not include in his "0.00" valuation of the
> VMR Stock in either the Petition or the Amended Petition (i) the
> value of VMR's right to collect royalties from Mitchell under the
> 1998 Agreement; (ii) the value of the claim that Mr. Tagliapietra
> had against Mitchell for ceasing royalty payments; or (iii) the
> value of the VMR Pre-existing Materials.

Mitchell also listed this affirmative defense in the Pretrial Order, citing Tagliapietra's

failure to disclose the existence of the cause of action during the course of his personal

bankruptcy proceedings, "as well as provide the bankruptcy court with a proper valuation of this

interest in the VMR stock."[3]

---

[2]Doc. 96.

[3]Doc. 99.

Mitchell moved for summary judgment on its affirmative defense, arguing both grounds for judicial estoppel, presented under distinct headings.  VMR responded, arguing that Tagliapietra had no knowledge of his potential claim in this case at the time he filed his petition, therefore, he accurately valued his VMR stock at 0.00.  VMR further argued that Tagliapietra did not have an ongoing duty to disclose his potential damages claim in this case.

At the beginning of the May 24th hearing, Mitchell's counsel made clear that its judicial estoppel defense was based on two theories: (1) a "classic theory" of judicial estoppel based on the failure to disclose VMR's claims in this case; and (2) Tagliapietra's representation that his 1000 shares of VMR stock held a value of 0.00.  Counsel made clear that this second theory of judicial estoppel was distinct, and that it was not tied to whether Tagliapietra had notice of the claims in this case prior to the time he filed his bankruptcy petition.  Counsel explained that if Tagliapietra believed at any point that VMR held an asset worth over $4 million, as VMR claims it is entitled in this case, Tagliapietra had a duty to disclose this to the bankruptcy trustee.  Counsel pointed to Tagliapietra's deposition testimony, where he unequivocally maintained that VMR's preexisting materials, as defined by the Agreement, are worth over $4 million.

The Court found that the facts viewed in the light most favorable to Tagliapietra did not support Mitchell's first theory of judicial estoppel because, crediting VMR's evidence, the breach of contract did not occur until after he filed his bankruptcy petition, so he was under no duty to disclose the lawsuit.  But the Court granted summary judgment on Mitchell's second theory of judicial estoppel—Tagliapietra's stock valuation.  The Court explained that the stock was an asset that existed pre-petition, unlike the cause of action in this case, so Tagliapietra had a continuing duty to disclose its true value.

The Court applied the three factors in the Tenth Circuit that should inform the decision as to whether to apply judicial estoppel.[4]  The Court's first task was to determine whether VMR had taken inconsistent positions in the bankruptcy proceeding and in this case.[5]  The Court found that VMR's breach of contract claim was premised on paragraph 8.1 of the Agreement, which provides that VMR retains the rights to any preexisting materials.  Because the iNTOTAL product includes preexisting materials, VMR claimed royalties on the sale or license of that product.  Indeed, in its summary judgment brief, VMR asserted that it was uncontroverted that, under the Agreement, "VMR retained the intellectual property rights, including, but not limited to, the concepts and, further, if Mitchell used the concepts, they would owe a royalty, whether it was the iNTOTAL product or a subsequent product."[6]  Citing evidence regarding the parties' negotiations, VMR took the position that "VMR would retain the rights of the TLSS concepts incorporated in both the prototype and the iNTOTAL product."[7]

The Court found that regardless of whether the royalty cap represented the appropriate measure of VMR's stock value in October 2005, VMR claimed to retain rights in those preexisting materials under the 1998 Agreement and they were worth something when Tagliapietra filed his bankruptcy petition.  In making this finding, the Court relied on VMR's own arguments on the merits of its claims, as well as Tagliapietra's deposition testimony that the preexisting materials for which VMR retained rights was worth in excess of $4 million.  Because

---

[4]*See, e.g.*, *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007).

[5]The Court pierced the corporate veil so Tagliapietra's actions in his Chapter 7 bankruptcy proceeding are attributable to VMR in this case.  Neither party challenges this finding.

[6]Doc. 93 ¶ 65.

[7]*Id.* at 35.

this representation allowed Tagliapietra to discharge over $1 million of his debt in 2005, the Court found he would gain a windfall for claiming in this lawsuit that he is now entitled to recover in excess of $4.5 million based Mitchell's alleged breach of the 1998 Agreement.

## II.    Discussion

VMR has filed a motion to alter or amend judgment, arguing that the Court misapprehended its claims in this case when it construed them as inconsistent with Tagliapietra's stock valuation in October 2005.  VMR further argues that the Court decided the judicial estoppel issue on grounds not advanced by Mitchell and not previously disclosed to VMR. Mitchell has filed a motion for sanctions under Rule 11, arguing that VMR's factual contentions in the motion to alter or amend are undisputably without evidentiary support and are inconsistent with its prior contentions in this case.  The Court first considers the motion to alter or amend.

### A.       Motion to Alter or Amend

A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[8]  Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[9]

VMR argues that its motion should be granted to correct clear error or prevent manifest

---

[8]*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

[9]*Servants*, 204 F.3d at 1012; *Brown v. Presb. Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997).

injustice.  Specifically, VMR argues that the Court misapprehended the facts, misstated both

parties' legal positions, and misapplied controlling law relating to judicial estoppel.  As stated in

detail below, the Court finds no clear error or manifest injustice in its June 7 Order.  Instead, the

Court finds that VMR misconstrued Mitchell's judicial estoppel defense and that its motion to

alter or amend is premised on legal theories and facts that should have been raised earlier.

        **1.**       **Misapprehension of the Law**

        **a.**       **The Court Granted Summary Judgment on Grounds Raised by Mitchell**

As an initial matter, the Court considers VMR's argument that the Court legally erred

because it imposed judicial estoppel on grounds not raised by Mitchell.  VMR mischaracterizes

Mitchell's defense when it contends that Mitchell's "sole" argument was tied to Tagliapietra's

failure to disclose the potential causes of action in this case during his bankruptcy proceeding.

Mitchell consistently presented two distinct bases for its judicial estoppel defense: that

Tagliapietra failed to disclose the potential claims in this case, and that he failed to properly

value his VMR stock on his bankruptcy schedules.  The Court finds no support in the record for

VMR's contention that this stock valuation argument was not asserted by Mitchell or that it was

strictly tied to the accrual of the contract claims.  The fact that VMR inexplicably failed to

respond to the argument separately is not evidence that Mitchell did not assert it in the first

instance.

Mitchell stated in the Amended Answer that its judicial estoppel defense was based in

part on VMR's "ownership in any intellectual property retained by VMR in connection with its

work with Mitchell on a total loss product (the "Pre-existing Materials")."  In separate

paragraphs, Mitchell alleged both theories of judicial estoppel.  With respect to the stock

valuation, Mitchell alleged that Mr. Tagliapietra did not include in his "0.00" valuation of the VMR Stock in either the Petition or the Amended Petition (i) the value of VMR's right to collect royalties from Mitchell under the 1998 Agreement; (ii) the value of the claim that Mr. Tagliapietra had against Mitchell for ceasing royalty payments; or (iii) the value of the VMR Pre-existing Materials.

Likewise, in its motion for summary judgment, Mitchell argued both theories of judicial estoppel under separate headings.  At the May 24th hearing, Mitchell's counsel introduced his judicial estoppel argument by setting forth both grounds, and specifically argued that the stock valuation ground was not tied to the accrual date for the causes of action in this case.  Rather than address this argument, VMR responded only to Mitchell's claims that Tagliapietra failed to disclose the causes of action in this case to the trustee.  There can be no doubt that VMR was on fair notice of the scope of Mitchell's judicial estoppel defense in the pleadings, summary judgment briefs, and at the hearing.  Not only was VMR on fair notice in the summary judgment briefing, but it was afforded a full and fair evidentiary hearing to present its evidence on the judicial estoppel defense.  Accordingly, the Court finds no legal error in its application of judicial estoppel on the basis of Tagliapietra's improper stock valuation of VMR in his bankruptcy schedules.

### b.   The Court Applied the Correct Test for Judicial Estoppel

In deciding whether to apply judicial estoppel, Court began by noting that it must consider all of the equities of the case.[10]  The Tenth Circuit Court of Appeals has announced three factors that should inform the Court's decision.  First, a party's later position must be

---

[10]*See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

clearly inconsistent with its previous position.[11]  Second, a court should determine whether the party "succeeded in persuading a court to accept that party's former position, 'so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled.'"[12]  Third, the court should determine whether the nonmoving party "would gain an unfair advantage in the litigation if not estopped."[13]  The Supreme Court articulates this third factor as "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."[14]  This requirement is in the disjunctive—the Court was permitted to either find that VMR would derive an unfair advantage or that it would impose an unfair detriment on the opposing party.  It is not required to find both.  This Court found that Tagliapietra would derive an unfair advantage if he was not estopped in this case. The Court considered all of the appropriate factors in reaching its decision to apply judicial estoppel.

### 2.    Misapprehension of the Facts

VMR contends that the Court misconstrued its claims in this case when it found that they were inconsistent with Tagliapietra's stock valuation in the bankruptcy case.  VMR argues that the preexisting materials hold no value unless Mitchell uses them, and so the Court erred in finding that their claims rely on the contention that the preexisting materials carry intrinsic value.

In finding that the claims are inconsistent, the Court was required to construe VMR's

---

[11]*Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007).

[12]*Id.* (emphasis in original).

[13]*Id.*

[14]*New Hampshire*, 532 U.S. at 751.

theories of relief in this case.  VMR repeatedly pointed to paragraph 8.1 of the Agreement as the source of its claims, which provides that VMR retained rights to preexisting materials that Mitchell allegedly used in developing the iNTOTAL product.  Indeed, VMR contended in its summary judgment briefs that it negotiated paragraph 8.1 in order to retain rights to those pre-existing materials.  The pre-existing materials are defined to include "concepts" used or applied to the TLSS product and its prototype.[15]

Now in its motion to alter or amend, VMR insists that under paragraph 8.1 of the Agreement, it has no right to preexisting materials and that those preexisting materials hold no independent value.  Instead, VMR maintains that the preexisting materials' value lies in their use by Mitchell, and that it has never contended that the preexisting materials have any inherent value outside of such use.  VMR urges that because Mitchell's use did not occur until the causes of action arose—after the bankruptcy petition was filed—Tagliapietra was under no duty to disclose any increase in stock value on the bankruptcy schedules.  VMR's attempt to thread the needle by distinguishing between the intrinsic value of the preexisting materials and their use by Mitchell is unavailing.  The bankruptcy estate includes legal or equitable interests of the debtor "in property as of the commencement of the case."[16]  The Court was careful to point out that the stock valuation basis for judicial estoppel was not tied to the accrual date for the causes of action in this case because there is no dispute that the asset—Tagliapietra's VMR stock—existed pre-petition.

Instead, the Court determined that Tagliapietra's position in the bankruptcy case that his

---

[15]Doc. 3, Ex. A ¶ 8.1.

[16]11 U.S.C. § 541(a)(1).

VMR stock was worth nothing is fundamentally at odds with the theories he asserts in this case to support VMR's damages request.  In this case, he argues that his retained rights in the preexisting materials, which preexisted his bankruptcy filing, entitle him to royalties under the Agreement.  Unlike the claims in this case, a post-petition asset, Tagliapietra did have a continuing duty to disclose the value of VMR stock, a pre-petition asset.[17]  It is undisputed that VMR's only value derives from these preexisting materials, which VMR retained under the 1998 Agreement.  Of course, Mitchell's alleged use of these materials in late 2005 increased their value to VMR.  The Court found that VMR's claims in this case rely on the fact that its intellectual property has value and this value should have been disclosed by Tagliapietra to the trustee.  Tagliapietra testified at his deposition that the value of these materials, retained by VMR under the Agreement, equaled the cap in royalty payments, or $4.5 million.  As the Court explained, regardless of whether this is the proper measure of the value of VMR stock in 2005, it is clear that the stock was worth something during the pendency of the bankruptcy proceeding.  This finding was grounded in the evidence presented by the parties on the briefs and at the hearing.

VMR also argues that the exit clause of the Agreement somehow gives weight to its argument that it did not retain rights to the preexisting materials under the Agreement.  It asserts that only upon termination would Mitchell return the preexisting materials to VMR.  But that is not what that provision says.  The exit clause governs the return of "Work Product," a term defined in paragraph 6.0, which governs Mitchell's ownership interests.  By contrast, VMR retained rights under paragraph 8.1 to "Preexisting Materials," a term separately defined.  As

---

[17]*See, e.g.*, *In re Batten*, 351 B.R. 256, 258–59 (Bankr. S.D. Ga. 2006) (explaining the difference in disclosure rules for pre-petition and post-petition assets).

12

VMR acknowledged in one of its summary judgment briefs: "Upon termination, the Pre-Existing Materials were to remain VMR's and the Work Product would revert from Mitchell to VMR."[18]  In other words, termination has no effect under the Agreement on VMR's ownership of the preexisting materials.

Moreover, VMR's new argument that the preexisting materials have no independent value is contrary to the plain language of the contract, and to its factual contentions in the Pretrial Order and on summary judgment.  VMR consistently and repeatedly maintained that it retained rights in the TLSS concepts, or pre-existing materials, and that its claims were based on the language in paragraph 8.1.[19]  Indeed, VMR argued that this section should be construed by the Court with the assistance of extrinsic evidence.  VMR offered evidence of the parties' negotiations: "Mitchell and VMR negotiated and agreed that VMR would retain the rights of the TLSS concepts incorporated in both the prototype and the iNTOTAL product."[20]  VMR relied on the testimony of a former Mitchell employee, who testified that this provision was included in order to "alleviate VMR's concerns that it would be protected should 'Mitchell decide to, you know, move on, develop their own product, take this product in-house and develop it.'"[21]  In making this argument, VMR relied on the "plain meaning" of paragraph 8.1.  According to VMR, because the iNTOTAL product incorporated the same concepts as the VMR prototype and

---

[18]Doc. 98 at 15.

[19]Pretrial Order, Doc. 99 at ¶¶ 5(a), 8(a); Pl. Memo. in Support of Summ. J., Doc. 86 at 2, 3, 10, 18, 20, 22; Pl. Reply Memo., Doc. 98 at 15, 28; Pl. Memo. in Opp. to Def. Mot. Summ. J., Doc. 93 at 13, 14, 20, 35–36, 39, 41–42.

[20]Doc. 93 at 35.

[21]*Id.* at 36 (quoting Riccardulli Dep. 142:5–144:10, Doc. 86-7).

TLSS product, concepts that "VMR retains," Mitchell owed VMR a royalty.[22]

At the hearing, the Court sought further clarification from counsel as to VMR's breach of contract theory. VMR's counsel reiterated its position that its claims were grounded in paragraph 8.1. of the Agreement, and "that the terms here and what this paragraph meant was that VMR would retain the rights to the concepts, the workflow, and how this software package operated. That those remain the rights of VMR."[23]

Finally, VMR argues that the Court erred when it observed that the preexisting materials can hold value despite the fact that they are not covered by a patent or copyright. The Court rejected this argument, asserted by VMR at the hearing, observing that assignment would be one way that the preexisting materials could be valuable to VMR. VMR points to paragraph 23 of the Agreement, which generally provides that the Agreement may not be assigned by either party. But this provision is irrelevant to the Court's contention that the preexisting materials are valuable to VMR, and, more importantly, that Tagliapietra had a duty to disclose the value of VMR stock to the trustee since it was a pre-petition asset. Moreover, the Court notes that paragraph 23 does not unequivocally bar assignment—it provides exceptions.

In sum, the Court finds no merit to VMR's contention that it misapprehended its claims in this case in finding that they were inconsistent with Tagliapietra's representations to the bankruptcy trustee that the VMR stock had no value.

**B.      Motion for Sanctions**

---

[22]*Id.* at 39.

[23]Tr. at 153 (attached as Ex. C to Doc. 117).

By signing and filing the motion to alter or amend and accompanying memorandum, VMR's attorneys certified that to the best of their

> knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; . . . [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.[24]

In deciding whether to impose sanctions, a district court employs an objective standard; the question is whether a reasonable and competent attorney would believe in the merit of an argument.[25]  Additionally, it is within the court's discretion to determine the factual issues and whether an argument is warranted by law.[26]  Rule 11 sanctions punish an attorney for filing false or misleading pleadings with the court; it ensures that an attorney abides by his duty as an officer of the court and conducts a reasonable inquiry into any fact alleged or denied.[27]

Mitchell claims that VMR's attorneys violated Rule 11(b)(1) and (3) by arguing in the motion to alter or amend that VMR retained no rights to the preexisting materials defined in the parties' 1998 Agreement.  Mitchell argues that this position is directly contrary to the language of the Agreement and to VMR's prior arguments in this case.  The Court must determine whether VMR's argument rises to the level of a Rule 11(b)(1) or (b)(3) violation.  If it does,

---

[24]Fed. R. Civ. P. 11(b).

[25]*Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991) (citations omitted).

[26]*Augustine v. Adams*, 88 F. Supp. 2d 1166, 1173–74 (D. Kan. 2000).

[27]*Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993).

imposition of sanctions is mandatory.[28]

As the Court has explained, it appears that VMR brings its motion to alter or amend in order to respond for the first time to an argument propounded by Mitchell in its Answer, in the Pretrial Order, on summary judgment, and at the May 24th hearing.  On summary judgment, VMR contended that it retained rights in the concepts allegedly utilized by Mitchell in developing its own product after Mitchell ceased using the TLSS product for which it had previously paid royalties.  In fact, VMR took the position that the parties intended to carve out VMR's rights in those preexisting materials at the time the contract was negotiated because Tagliapietra was concerned that, otherwise, Mitchell could use those concepts and ideas in developing its own product at a later date.  VMR argued on summary judgment that this issue caused the parties to negotiate paragraph 8.1 of the Agreement.  The Court observed in its June 7 Order that this factual contention formed the basis of VMR's claim that it was owed damages for breach of contract and breach of the duty of good faith and fair dealing—damages in excess of $4 million in unpaid royalties.

While the Court ultimately finds that VMR fails to meet its burden of showing that the Court erred in applying judicial estoppel, it declines to find that counsel's argument is objectively unreasonable, sufficient to warrant Rule 11 sanctions.  It is evident that counsel had a good faith belief that their arguments in response to Mitchell's first ground for applying judicial estoppel—Tagliapietra's failure to disclose the potential claim in this case—sufficed to contest Mitchell's second ground for judicial estoppel.  But the fact that VMR's motion to alter or amend is insufficient under the applicable standard does not dictate a finding that it is objectively

---

[28]*See Augustine*, 88 F. Supp. 2d at 1174.

unreasonable.  Accordingly, the Court denies Mitchell's motion for sanctions.

**IV.     Conclusion**

VMR does not meet its burden of showing that the Court erred, sufficient to alter or amend its summary judgment ruling.  Instead, the Court finds that VMR asserts factual arguments that should have been raised earlier.  In responding to the motion for sanctions, VMR acknowledges the utility of its motion to alter or amend: "If VMR had appealed upon entry of the Order, instead of filing the Rule 59(e) Motion, there can be no doubt that Mitchell would be telling the Tenth Circuit Court of Appeals that the matter of intrinsic value was not properly before the appellate court because it had not been argued below."[29]  The Court declines to allow VMR another bite at the apple.  The parties filed cross-motions for summary judgment, setting forth their respective positions, and the Court conducted a full and fair evidentiary hearing on the judicial estoppel defense.  As documented in this Order, VMR was on notice of the contours of Mitchell's affirmative defense.  VMR made the strategic decision to argue that both grounds of judicial estoppel failed based on the accrual date for the causes of action in this case; the Court disagreed.  The Court's decision was based on issues squarely presented by Mitchell and on factual averments presented by VMR.  It was supported by Tagliapietra's own deposition testimony.  Under these circumstances, relief under Rule 59(e) is not warranted.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Alter or Amend Judgment (Doc. 112) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 and Local Rule 11.1 (Doc. 116) is **denied**.

---

[29]Doc. 118 at 14.

**IT IS SO ORDERED.**

Dated: November 14, 2012

                                      S/ Julie A. Robinson

                                      JULIE A. ROBINSON

                                      UNITED STATES DISTRICT JUDGE