# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VEHICLE MARKET RESEARCH, INC., ) ) ) Plaintiff, ) ) vs. ) ) MITCHELL INTERNATIONAL, INC., ) ) Defendant. ) ) | Case No. 09-2518-JAR |

## MEMORANDUM AND ORDER

This is a dispute between Plaintiff Vehicle Market Research, Inc. ("VMR") and Defendant Mitchell International, Inc. ("Mitchell") over whether Mitchell owes VMR royalties under a software development contract. VMR brings claims against Mitchell for breach of contract and breach of the covenant of good faith and fair dealing under California law; Defendant denies that it breached the contract and violated the implied covenant of good faith and fair dealing and seeks a declaratory judgment. The Court has denied the parties' motions for summary judgment and the matter is currently set for trial on August 31, 2015.

Before the Court is Plaintiff's Motion to Renew Daubert Motions to Exclude Defendant's Witnesses Trivett and Nilson (Doc. 143). The Court previously denied these as moot.[1] The Court grants the parties' motion to renew these *Daubert* motions and briefs previously submitted by the parties.[2] For the reasons explained below, the Court denies VMR's motions to exclude

---

[1]The Court originally granted Defendant Mitchell's motion for summary judgment on judicial estoppel grounds. That Order was reversed and remanded and the Court denied summary judgment on the renewed motions as to the merits of the contract claims.

[2]Docs. 100–06.

expert testimony.

**I.     Standard**

The Court has broad discretion in deciding whether to admit expert testimony.[3]  Fed. R. Evid. 702 provides that:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the evidence or
> to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and
> (d) the expert has reliably applied the principles and methods to
> the facts of the case.[4]

The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation."[5]  In order to determine whether an expert opinion is admissible, the Court performs a two-step analysis.  "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.'"[6]  To determine reliability, the Court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid."[7]  Second, the district court must further inquire

---

[3]*Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citation omitted).

[4]Fed. R. Evid. 702.

[5]*Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999).

[6]*Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

[7]*BG Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 703 (10th Cir. 2012).

into whether the proposed testimony is sufficiently "relevant to the task at hand."[8]  An expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . absolute certainty is not required."[9]  It is not necessary to prove that the expert is "indisputably correct," but only that the "method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements."[10]

It is within the discretion of the trial court to determine how to perform its gatekeeping function under *Daubert*.[11]  The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated.[12]  In this case, the parties do not request a hearing.  The Court has carefully reviewed the submissions filed with the motions and believes this review is sufficient to render a decision.

## II.     Todd Trivett

VMR does not contest the qualifications or reliability of expert Todd Trivett.  VMR asks the Court to exclude him from testifying solely on relevance grounds because Trivett is expected to testify that Mitchell did not use the same software source code as VMR's total loss product, an issue that is no longer in dispute.  Mitchell responds that Trivett's testimony is relevant because VMR continues to claim that Mitchell relied on VMR's source code in creating TLV, even if it does not claim that it literally copied the source code.

---

[8]*Id*. (quoting *Daubert*, 509 U.S. at 597).

[9]*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

[10]*Id.*

[11]*Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

[12]*Id.*

On summary judgment, it was uncontroverted that TLV and iNTOTAL were different products that were written in different code languages; there was no literal copying of the VMR-developed source code into TLV.  But it was also uncontroverted that several Mitchell employees recall that iNTOTAL was reviewed by the Mitchell developers and by Infogain in order to understand the ideas behind what a total loss system should entail, and to be able to write requirements and specifications for the TLV product.  And VMR argued that Infogain, the software development company Mitchell hired to help develop TLV, "re-architectured" the iNTOTAL software code.  In fact, this is one of the ways in which VMR claims Mitchell breached the contract.  Trivett states in his report that Mitchell asked him to address the following issue: "whether the WorkCenter Total Loss™ product incorporates in whole or in significant part the source code of the iNTOTAL product."[13]  After reviewing relevant documents and the source code from both products, Trivett opines in his report that "there was absolutely <u>no literal copying</u> of VMR-developed source code," and that Mitchell's product "<u>does not</u> incorporate in whole or in significant part any of the original computer source code created by [VMR]."[14]  While the issue of literal copying appears to no longer be at issue in this case, because of VMR's claim about re-architecturing, the Court finds that Trivett's expected testimony is sufficiently relevant because he opines that the product does not incorporate either in whole or in significant part any of iNTOTAL's original source code.  To the extent VMR contends that this testimony does not directly contradict its evidence of re-architecturing, the Court finds that this goes to the weight and not the admissibility of the expected testimony.  The

---

[13]Doc. 103, Ex. A at 5–6

[14]*Id.* at 10–11 (emphasis in original).

4

Court therefore denies the motion to exclude Trivett's expert report.

**III.    Larry Nilson**

VMR argues that Nilson's testimony is neither reliable nor relevant. First, it argues that the testimony is unreliable because Nilson lacks expertise about total loss systems and their functionality, and because his report is not based on objective data derived during the relevant time period. To be qualified to render an expert opinion, Nilson must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."[15] A witness's lack of specialization does not affect the admissibility of the opinion, only the weight.[16]

The Court finds that Nilson is qualified to testify about features included in other total loss products in the marketplace before VMR's product was introduced. Nilson's report establishes that he has spent more than thirty years working on total loss issues in or around the auto industry. In 1983, he and his business partner founded National Auto Data Service ("NADS"), which provided automobile dealers and insurance companies with information to more accurately value vehicles, including total loss vehicles. Insurance companies that used NADS "were able to identify comparable vehicles . . . and base a total loss valuation on these comparable vehicles."[17] ADP, one of Mitchell's competitors, purchased NADS in 1992, and Nilson worked for ADP, primarily working on a project to combine features of NADS and AutoTrack into "a new total loss valuation product that was released to the market in 1993 as

---

[15]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (quotation omitted).

[16]*First Savings Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1078, 1084 (D. Kan. 2000) (citing *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

[17]Doc. 104, Ex. A at 1.

AutoSource."[18]  He returned to ADP in 1994 as a consultant where he worked until 1995.[19] From 1995 to 1998, Nilson did some limited appraisal work for a bankruptcy attorney in Vancouver, Washington.[20]

VMR argues that Nilson's opinion is unreliable because he was not personally involved in the total loss valuation industry between 1995 and 1998 and conducted no research about the "state of the art" prior to 1998 when he prepared his report.  Therefore, VMR claims that Nilson cannot testify "with certainty" what the total loss information providers at that time relied upon in their calculations.

The Court finds that Nilson's testimony possesses the indicia of reliability sufficient to pass *Daubert*'s reliability inquiry.  First, the Court is mindful that Rule 702 does not require "absolute certainty."[21]  Nilson examined the screenshots and the deposition testimony of Tagliapietra that form the basis of VMR's claim that it brought concepts to the TLSS Product that were new and unique.  Importantly, Nilson's opinion as to all seven of the features discussed in his report is that they existed in other products developed well before 1998, in the systems he had personal experience working with: NADS and AutoSource.  In other words, regardless of what the "state of the art" was in 1995–1998, Nilson identified these features as being present in systems that were developed well before this time period.  VMR argues that Douglas's report that was authored just prior to the 1998 Software Development Contract at issue in this case

---

[18]*Id.*

[19]*Id.*; Doc. 102-1, Ex. 1 at 57:2–23.

[20]Doc. 102-1, Ex. 1 at 57:9–23.

[21]*See, e.g.*, *Kechi Tp. v. Freightliner, LLC*, 592 F. App'x 657, 672 (10th Cir. 2014); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995).

suggests customer dissatisfaction with the other providers of total loss valuation programs offered by CCC and ADP.  The Court cannot find that this competing evidence requires a finding that Nilson's opinion is speculative, it simply challenges the weight of Nilson's opinion.[22]  The fact that Nilson's experience just prior to 1998 was limited by his minimal participation in the industry after 1995 likewise goes to the weight and not the admissibility of his testimony.

Next, VMR argues that Nilson's opinion is not relevant because whether VMR's total loss concepts were unique or novel does not dictate whether there was a breach of contract in this case.  The Court agrees that the contract itself does not explicitly limit Pre-Existing Materials, which would include VMR's concepts and ideas, based on whether or not they are "novel" or "unique," an inquiry that may be relevant if Plaintiff had asserted patent claims in this matter.  However, in assessing the breach of contract claim, as described in the summary judgment order, the jury will be required to determine whether Mitchell used <u>VMR's</u> Pre-Existing Material in developing its TLV product.  The Court finds that evidence about whether these concepts were standard for total loss products developed in the industry up to that point, or were instead uniquely developed by VMR in the TLSS product, will aid the trier of fact in making its determination about whether Mitchell breached the contract.

Likewise, Nilson's opinion is relevant to the breach of good faith and fair dealing claim.  To determine if Mitchell breached the covenant, the jury will have to determine whether Mitchell's conduct had the effect of destroying or injuring the right of VMR to receive the fruits

---

[22]Personal knowledge is not the standard for experts; the opinions must only have a reliable basis. *See, e.g.*, *Mitchell v. Gencorp. Inc.*, 165 F.3d 778, 780 (10th Cir. 1999); *see also Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (explaining that to the extent firsthand knowledge by the expert is relevant, it goes to the weight and not the admissibility of the testimony).  Here, the expert possesses firsthand knowledge about the functionality of competing systems, at least as of 1995.

of the contract.[23]  The jury must determine whether the conduct at issue is "contrary to the contract's purposes and the parties' legitimate expectations."[24]  Relevant to that inquiry will be whether Mitchell understood it was using concepts that belonged to VMR.  VMR's motion to exclude the expert testimony of Nilson is thus denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Renew Daubert Motions to Exclude Defendant's Witnesses Trivett and Nilson (Doc. 143) is **granted**. The motions to exclude (Docs. 100, 101) are **denied**.

Dated: August 21, 2015

          S/ Julie A. Robinson
          JULIE A. ROBINSON
          UNITED STATES DISTRICT JUDGE

---

[23]*Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000).

[24]*Avidity Partners, LLC v. State*, 165 Cal. Rptr. 3d 299, 320 (Cal. Ct. App. 2013); *see also Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (Cal. 1992) (en banc).