# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| VEHICLE MARKET RESEARCH, INC., | ) ) ) | |
|       Plaintiff, | ) ) | |
|       vs. | ) ) | Case No. 09-2518-JAR |
| MITCHELL INTERNATIONAL, INC., | ) ) | |
|       Defendant. | ) ) | |

## JURY INSTRUCTIONS

INSTRUCTION NO. 1

MEMBERS OF THE JURY:

The presentation of evidence is now complete.  I gave you some general instructions and definitions at the outset of this case and I now give you final instructions.  You may read along with me, or you may simply listen as I read these instructions.  If you read along, stay with me.  You will each be allowed to take your copy of the instructions to the jury room for further reference during your deliberations.

You must follow the law as set out in these instructions and apply that law to the facts you find from the evidence presented in this trial.  No single instruction or smaller group of instructions states the law; you must consider all the instructions as a whole.  You are not to question the wisdom of any of these instructions.

INSTRUCTION NO. 2

You must weigh and consider this case without sympathy and without bias for or against any party.  You must not be influenced by anything not within the issues of the case.

You must consider and decide this case as an action between persons of equal standing in the community.  A corporation is entitled to the same fair trial as an individual.

INSTRUCTION NO. 3

The following instruction sets forth the claims of the respective parties, as stated in the case, and these claims are not to be considered by you as any evidence in this case. The allegations of the respective parties must be established and proven by the evidence.

INSTRUCTION NO. 4

The plaintiff in this case is a corporation, Vehicle Market Research, Inc.  I will refer to the plaintiff as "VMR."  The defendant in this case is a corporation, Mitchell International, Inc.  I will refer to the defendant as "Mitchell."

VMR has made two claims in this case.  You must give separate consideration to each claim by VMR.

VMR's first claim is that Mitchell breached a Computer Programming and Systems Integration Services Agreement with VMR by failing to pay VMR royalties that were due.

VMR's second claim is that Mitchell breached the implied covenant of good faith and fair dealing by unfairly interfering with VMR's right to receive the benefits of the contract. Mitchell denies each of these claims.

INSTRUCTION NO. 5

The burden is on the plaintiff in a civil action, such as this, to prove every essential element of its claim by a preponderance of the evidence.  If the proof should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence in the case, the jury should find for the defendant as to that claim.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

INSTRUCTION NO. 6

To recover damages from Mitchell for breach of contract, VMR must prove all of the following:

1.      That VMR and Mitchell entered into a contract;

2.      That VMR did all, or substantially all, of the significant things that the contract required it to do;

3.      That all conditions required by the contract for Mitchell's performance had occurred;

4.      That Mitchell failed to do something that the contract required it to do; and

5.      That VMR was harmed by that failure.

If you find that VMR failed to prove any of these elements by a preponderance of the evidence, then your verdict must be in favor of Mitchell on VMR's claim for breach of contract.

INSTRUCTION NO. 7

The Computer Programming and Systems Integration Services Agreement admitted into evidence as Exhibit 1 governs the rights and duties of the parties.

VMR and Mitchell dispute the meaning of the following words in their Agreement:

1.0 Professional Services and Scope of Work: . . . VMR agrees to perform for, and to provide to MITCHELL, and MITCHELL agrees to purchase from VMR and pay VMR for, Professional Services as described in Schedule A . . . required by MITCHELL in the design, development, production, installation, services, maintenance, and agreed upon enhancements of the MITCHELLTotal Loss Settlement System (TLSS).

6.0 Proprietary Interest in MITCHELL Products. It is the intent of the parties that MITCHELL shall own all work product, including without limitation, software, computer programs (in Object and Source code formats) techniques, systems, methodologies, reports and records and other materials prepared for MITCHELL by VMR (Work Product) arising from the performance of the Professional Services. The Work Product shall be deemed to have become the property of MITCHELL immediately upon its creation or invention, regardless of the form of embodiment, stage of completion, format, platform or language. The parties intend that (I) VMR shall perform all Professional Services hereunder as an independent contractor . . . . VMR agrees that MITCHELL shall own all copyright, trademark, trade secret, patent and other intellectual property rights associated with or appurtenant to any Work Product discovered, created, invented or developed under this Agreement without regard to the origin of the Work Product.

6.1. VMR covenants and agrees with MITCHELL that VMR shall neither make claim, nor have any claim, of any design, invention, patent copyright, trade secret or other right(s), or any proprietary interest in any MITCHELL product on which, or for which, it may perform Professional Services hereunder unless expressly agreed upon by both parties in writing. Nothing in this Agreement shall be construed as giving VMR or any Personnel, or resulting in VMR or any Personnel having any proprietary or any other ownership interest, in any of TLSS or Work Product . . . .

8.0 Non Disclosure, Confidentiality and Use Restrictions: . . . . MITCHELL shall keep confidential, and not disclose to any third party and, except as specifically authorized in this Agreement shall not use Confidential Information of VMR provided to MITCHELL by VMR; provided however,

MITCHELL may freely use and shall have a perpetual, paid-up nonexclusive license to use any information, know how or trade secrets that are incorporated by VMR into the TLSS Product, any deliverable or Work Product or as part of the Professional Services hereunder. The reservation of VMR's rights in the VMR Confidential Information shall not be deemed to limit or abrogate in any way any of MITCHELL's rights set forth in Paragraphs 6 or 8 hereof.

8.1 Ownership of Materials and Intellectual Property: During the term of this Agreement and upon completion of all payments due, termination, cancellation, or expiration of this Agreement, but subject to the provisions of Paragraph 28 hereof, VMR shall immediately turn over all items (including the TLSS Product, Work Product or work in process) in its possession which were prepared pursuant to this Agreement or made available to VMR . . . used in developing the TLSS Product and Work Product and all rights, title, and interest or other materials furnished to VMR by MITCHELL during the course of VMR performing Professional Services, and all copies thereof . . . .

Notwithstanding the foregoing, VMR retains all right, title and interest in, and to any pre-existing software tools, utilities, concepts, techniques, text, research or development methods that VMR used in or applied to the development of the TLSS Product (the "Pre-Existing Materials").

VMR hereby grants MITCHELL an exclusive right and license to modify, adapt, reproduce, use and distribute the Pre-existing Materials as part of the TLSS Product and as part of any adaptations, updates, enhancements or other derivative works based thereon.

Schedule A Overview: VMR in conjunction with DAIS Incorporated ("Dais") acting as a MITCHELL approved independent contractor agrees to design, develop, maintain and support the Total Loss Settlement System (TLSS Product) based upon the VMR prototype system and MITCHELL/VMR product specifications.

. . . .

. . . . Mitchell will pay VMR a royalty on all Eligible Revenue until a maximum cumulative total of $4,500,000 is paid out . . . . For the purposes of this Agreement, "Eligible Revenue" shall mean revenue collected by MITCHELL from the sale or license of the TLSS Product as well as related Ancillary Databases, for the applicable year, relating to invoices issued of,

> from or for the TLSS Product and Ancillary Databases, net of uncollectible amounts, returns (including out-of-pocket expenses), allowances, credits, cash, quantity and other trade discounts, shipping and insurance charges invoiced to a purchaser of services, and sales, use, value added or similar taxes to the extent borne by MITCHELL, as calculated in accordance with generally accepted accounting principles, consistently applied.

VMR claims that the words mean that the Agreement required Mitchell to pay VMR royalties on revenue earned by Mitchell resulting from Mitchell's licensing and sale of the TLSS Product, as well as any other product licensed and sold by Mitchell that may have used VMR's "Pre-Existing Materials" or "concepts."

Mitchell claims that the words mean that the Agreement required Mitchell to pay VMR a royalty on all "Eligible Revenue" earned by Mitchell resulting only from Mitchell's licensing and sale of the iNTOTAL software product, which was the brand name for the TLSS Product. Mitchell also claims that the words mean that the Agreement required Mitchell to pay VMR a royalty on all "Eligible Revenue," pursuant to a royalty rate schedule. "Eligible Revenue" was defined in the Agreement as "revenue collected by Mitchell from the sale or license of the TLSS Product." "TLSS Product," is defined as the "Total Loss Settlement System" that VMR agreed to "design, develop and support," and which would be "based on the VMR prototype system." "TLSS Product" is therefore the software product that VMR and Mitchell agreed to build pursuant to the Agreement at issue, and royalties due under the Agreement are based on revenue derived from the sale or license of that software product.

VMR must prove that its interpretation is correct.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the

language used in the contract as well as the circumstances surrounding the making of the contract.

The following instructions may also help you interpret the words of the contract.

## INSTRUCTION NO. 8

You should assume that the parties intended the words in the Computer Programming and Systems Integration Services Agreement to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

INSTRUCTION NO. 9

You should assume that the parties intended technical words used in the Computer Programming and Systems Integration Services Agreement to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

INSTRUCTION NO. 10

In deciding what the words of the Computer Programming and Systems Integration Services Agreement meant to the parties, you should consider the whole Agreement, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

INSTRUCTION NO. 11

In deciding what the words in the Computer Programming and Systems Integration Services Agreement meant to the parties, you may consider how the parties acted after the Agreement was created but before any disagreement between the parties arose.

INSTRUCTION NO. 12

The Computer Programming and Systems Integration Services Agreement must be interpreted to give effect to the agreement of the parties at the time of contracting.  You must determine what the parties agreed to by the words used in the written contract.  What the parties agreed to is based on the words and acts of the parties and not on their thoughts or unstated intentions.

## INSTRUCTION NO. 13

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

VMR claims that Mitchell violated the duty to act fairly and in good faith.  To establish this claim, VMR must prove all of the following:

1.    That VMR and Mitchell entered into a contract;

2.    That VMR did all, or substantially all of the significant things that the contract required it to do;

3.    That all conditions required for Mitchell's performance had occurred;

4.    That Mitchell unfairly interfered with VMR's right to receive the benefits of the contract; and

5.    That VMR was harmed by Mitchell's conduct.

INSTRUCTION NO. 14

The amount of damages sustained by the plaintiff with respect to VMR's claim for breach of contract is not an issue for you to decide.  You need only decide the issue of VMR's claim for breach of contract.

The fact that the amount of plaintiff's damages for breach of contract has already been determined should not influence you in any way as you determine the issue submitted to you.

INSTRUCTION NO. 15

If you decide that Mitchell breached the implied covenant of good faith and fair dealing but also that VMR was not actually damaged by the breach, you may still award it nominal damages such as one dollar.

INSTRUCTION NO. 16

VMR seeks damages from Mitchell under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

INSTRUCTION NO. 17

During the trial, I informed you that the parties had agreed or stipulated to certain facts. That stipulation was then read to you.  As I also indicated to you at that time, these instructions contain a written copy of those stipulations agreed upon by the parties.  The parties stipulate that:

1.      VMR is a corporation organized under the laws of the State of Kansas.

2.      Mitchell is a corporation organized under the laws of the State of Delaware.

3.      Mitchell provides information, workflow, and performance management solutions to improve business processes for insurance companies and collision repair facilities.

4.      A total loss product is a product that assists automobile insurers in providing a fair market value for a vehicle that has been declared a total loss, i.e. a vehicle that will cost more to repair than its value at the time of the accident.

5.      On March 20, 1998, VMR and Mitchell executed a Computer Programming and System Integration Services Agreement.

A stipulation simply means that both the parties accept these facts as true.  There was no disagreement over these facts, so there was no need for evidence on either side of these facts. Since the parties have so agreed, you are to take these facts as true for the purposes of this case.

INSTRUCTION NO. 18

You may consider as evidence the testimony of witnesses in person or by deposition, and the exhibits admitted into evidence, which you will have in the jury room during your deliberations. A deposition is the testimony of a person taken before trial. At a deposition the person is sworn to tell the truth and is questioned by the attorneys. You must consider the deposition testimony that will be presented to you in the same way as you consider testimony given in court.

INSTRUCTION NO. 19

In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation.  The Rule 30(b)(6) designee does not give his personal opinion.  Rather, he presents the corporation's "position" on the topic.  The designee testifies on behalf of the corporation and thus holds it accountable.

INSTRUCTION NO. 20

The parties may prove any fact through either direct or circumstantial evidence. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is indirect evidence, that is, proof of a chain of facts from which you could find that another fact exists, even though not proved directly.

In deciding if a fact has been proved by circumstantial evidence, you will consider all the evidence in the light of reason, common sense, and experience.

You may give the same weight to circumstantial evidence as you give to direct evidence.

INSTRUCTION NO. 21

You are permitted to draw reasonable inferences from the testimony and exhibits you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts established by the testimony and evidence in the case.

INSTRUCTION NO. 22

You must consider all the evidence, but you need not accept all evidence as true or accurate.

You will determine the weight and credit to be given the testimony of each witness.  You may use common sense, common knowledge and experience in weighing that testimony.

The number of witnesses who testify about a matter may or may not determine the weight of the evidence.  The testimony of a fewer number of witnesses concerning any fact may be more credible than the testimony of more witnesses to the contrary.

Similarly, you will determine the weight and credit to be given to each exhibit.

INSTRUCTION NO. 23

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to his or her testimony. In weighing the testimony of a witness you should consider the witness's relationship to the plaintiff or to the defendant; any interest the witness may have in the outcome of the case; the witness's manner while testifying; the opportunity and ability to observe or acquire knowledge concerning the facts about which the witness testified; the witness's candor, fairness and intelligence; and the extent to which the witness has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

When weighing conflicting testimony you should consider whether the discrepancy has to do with a material fact or with an unimportant detail, and should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

In addition, while you must consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case.

INSTRUCTION NO. 24

A witness may be discredited or "impeached" by contradictory evidence, or by evidence that at some other time the witness has said or done something, or failed to say or do something, which is inconsistent with the witness's testimony at trial.

If you believe any witness has been so impeached, you may give the testimony of that witness such weight as you believe it deserves.

If a witness is shown to have deliberately testified falsely concerning any material matter, you have a right to distrust that witness's testimony.  You may reject any part or all of that witness's testimony.

An act or omission is deliberate if done voluntarily and intentionally and not through mistake, accident, or other innocent reason.

INSTRUCTION NO. 25

A witness is a person who has knowledge related to this case.  You will have to decide whether you believe each witness and how important each witness's testimony is to the case. You may believe all, part, or none of a witness's testimony.

In deciding whether to believe a witness's testimony, you may consider, among other factors, the following:

(a)   How well did the witness see, hear, or otherwise sense what he or she described in court?

(b)   How well did the witness remember and describe what happened?

(c)   How did the witness look, act, and speak while testifying?

(d)   Did the witness have any reason to say something that was not true?  For example, did the witness show any bias or prejudice or have a personal relationship with any of the parties involved in the case or have a personal stake in how this case is decided?

(e)   What was the witness's attitude toward this case or about giving testimony?

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other

hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Do not make any decision simply because there were more witnesses on one side than on the other.  If you believe it is true, the testimony of a single witness is enough to prove a fact.

INSTRUCTION NO. 26

If a party failed to explain or deny evidence against it when it could reasonably be expected to have done so based on what it knew, you may consider its failure to explain or deny in evaluating that evidence.

It is up to you to decide the meaning and importance of the failure to explain or deny evidence against the party.

INSTRUCTION NO. 27

It is proper for a lawyer to meet with any witness in preparation for trial.

INSTRUCTION NO. 28

I have instructed you about damages in Instructions 14, 15, and 16, but that does not mean I believe the plaintiff should, or should not, prevail in this case.  That decision rests with you.

Your verdict must represent the considered judgment of each juror.  Your verdict must be unanimous.

As jurors, you must consult with one another and deliberate with a view to reaching an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but only after an impartial consideration of all the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine your own views or to change your opinion if you are  convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or simply to return a verdict.

Remember at all times you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

INSTRUCTION NO. 29

In considering the evidence in this case, you are expected to use your good sense; consider the evidence for only those purposes for which it has been admitted, and give it a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

You are to perform your duty without bias as to any party or person. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion. That was the promise you made and the oath you took before being accepted by the parties as jurors and they have the right to expect nothing less.

Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything but the evidence in, and the law applicable to, this case.

INSTRUCTION NO. 30

At the beginning of trial, I instructed that you could take notes during the course of trial and cautioned that your note-taking should not interfere with your duty to listen and consider all the evidence.  Now that you are about to begin your deliberations, I would like to comment on your use of any notes during the deliberations.

There is always a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  If you did not take notes, you should rely upon your own independent recollection or memory of what the evidence was, and you should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror as to what the evidence was.  Above all, your memory should be your greatest asset during your deliberations.

INSTRUCTION NO. 31

Statements, objections or arguments the lawyers make are not evidence. Lawyers point to those matters which are most significant or most helpful to their side of the case and to those matters which are most damaging to the opponent's case, calling your attention to certain facts or inferences that might otherwise escape your notice.

INSTRUCTION NO. 32

I explained to you that certain evidence was admitted for a limited purpose.  You may consider that evidence only for the limited purpose that I described, and not for any other purpose.

INSTRUCTION NO. 33

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess to discuss matters outside of your presence. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence.  Do not be concerned about our discussions or try to guess what is being said.

I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of my view of the evidence.

INSTRUCTION NO. 34

At times during the trial, I have ruled on the admission of certain testimony and exhibits. Those matters are questions of law for the court.  Do not concern yourselves with or draw any inferences from those rulings.

I have not intended to and I do not express or suggest any opinion in these instructions, my rulings, actions or remarks about the resolution of any issue in this case.

You will now hear arguments of counsel.  Their role is to offer interpretations of the evidence consistent with their respective causes.  Please give them your thoughtful and respectful attention.

INSTRUCTION NO. 35

This is an important case.  If you should fail to reach a decision, the case is left open and undecided.  Like all cases, it must be decided sometime.  There is no reason to believe that the case can be tried again any better or more exhaustively than it has been.  There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

Also there is no reason to believe that the case would ever be submitted to people more intelligent or more impartial or more reasonable than you.  Any future jury must be selected in the same manner that you were.

This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor.  If at all possible, you should resolve any differences and come to a common conclusion so that this case may be completed.

INSTRUCTION NO. 36

When you retire to the jury room, you will first select one of your members to preside over your deliberations, speak for the jury in court and sign the verdict upon which you agree.

In this case your verdict will be returned in the form of written answers to special written questions submitted by the court.  Your answers will constitute your verdict.  Your answers to the questions must be unanimous.  Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions.

It is your duty, as jurors, to discuss this case with one another in the jury room.  You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.  Remember at all times that you are not partisans.  You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

INSTRUCTION NO. 37

During your deliberations, that is when all of you are together in the jury room, you are released from the admonition regarding discussion of the case.

The admonition regarding discussion remains in effect at any time when all of you are not in the jury room, or when you are away from the courthouse. The admonition regarding reading, listening to or watching news reports about the case, doing any sort of independent investigation or discussing the case with any third party, remains in effect at all times until such time as I release you from the admonition.

You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our

judicial system, it is important that you are not influenced by anything or anyone outside of this

courtroom.  Otherwise, your decision may be based on information known only by you and not

your fellow jurors or the parties in the case.  This would unfairly and adversely impact the

judicial process.

INSTRUCTION NO. 38

I know that many of us are used to communicating and perhaps even learning by electronic communications and research.  However, there are good reasons why you must not electronically communicate or do any research on anything having to do with this trial or the parties.

In court,  jurors must make important decisions that have consequences for the parties. Those decisions must be based only on the evidence that you hear in this courtroom.

The evidence that is presented in court can be tested; it can be shown to be right or wrong by either side; it can be questioned; and it can be contradicted by other evidence.  What you might read or hear on 'your own could easily be wrong, out of date, or inapplicable to this case.

The parties can receive a fair trial only if the facts and information on which you base your decisions are presented to you as a group, with each juror having the same opportunity to see, hear, and evaluate the evidence.

Also, a trial is a public process that depends on disclosure in the courtroom of facts and evidence.  Using information gathered in secret by one or more jurors undermines the public process and violates the rights of the parties.

INSTRUCTION NO. 39

If it becomes necessary during your deliberations to communicate with the court, please write out your message or question, have the presiding juror sign and date it, and give the note to the law clerk or bailiff stationed outside of the jury room.  No member of the jury should ever attempt to communicate with the court by any means other than a signed writing, and the court will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

You will note from the oath taken by the bailiffs that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.  With regard to any message or question you might send, you should never state or specify your numerical division at the time.  In other words, do not reveal how the group is voting, unless it is in response to a direct question from me about your division. Bear in mind also that you are never to reveal to any person how the jury stands— numerically or otherwise—on the question before you, until after you have reached an unanimous verdict.

You may now retire and conduct your deliberations in such manner as may be determined by your good judgment as reasonable people.

INSTRUCTION NO. 40

A final suggestion by the court—not technically an instruction upon the law—may assist your deliberations.  The attitude of jurors at the outset of and during their deliberations is important.  It is seldom productive for a juror, immediately upon entering the jury room, to make an emphatic expression of his or her opinion upon the case or to announce a determination to stand for a certain verdict.  The reason is obvious: we are all human and it is difficult to recede from a position once definitely stated, even though later convinced it is unsound.

Jurors are selected for the purpose of doing justice.  This presupposes and requires deliberation—counseling together in an effort to agree.  Have in mind at all times, therefore, that you are a deliberative body, selected to function as judges of the facts in a controversy involving the substantial rights of the parties.  You will make a definite contribution to efficient administration of justice when and if you arrive at a just and proper verdict under the evidence which has been adduced.  No one can ask more and you will not be satisfied to do less.

September 8, 2015
Date

Julie A. Robinson
United States District Judge