# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

VEHICLE MARKET RESEARCH, INC.,

    Plaintiff,

v.

MITCHELL INTERNATIONAL, INC.,

    Defendant.

Case No. 09-2518-JAR

## MEMORANDUM AND ORDER

This case proceeded to trial on August 31, 2015, to resolve a dispute between Plaintiff Vehicle Market Research, Inc. ("VMR") and Defendant Mitchell International, Inc. ("Mitchell") over whether Mitchell owed VMR royalties under a software development contract. The jury returned a verdict for Mitchell and judgment was entered on the verdict. Plaintiff appealed and the Tenth Circuit Court of Appeals affirmed. Mitchell proceeded to file its Bill of Costs,[1] to which VMR objected.[2] The Clerk of Court taxed costs in the amount of $93,134.78 against VMR.[3] Before the Court is VMR's Motion to Retax Costs (Doc. 244). The motion is fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants in part and denies in part VMR's motion to retax costs.

**I.    Standard**

Under Fed. R. Civ. P. 54(d), "costs should be allowed to the prevailing party." Such costs may include the expenses provided under 28 U.S.C. § 1920:

    (1) Fees of the clerk and marshal;

---

[1] Doc. 238.
[2] Doc. 240.
[3] Doc. 243.

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Court's award of costs is discretionary, and its "discretionary power 'turns on whether or not the costs are for materials necessarily obtained for use in the case.'"[4] The prevailing party bears the burden of showing the amount of costs to which it is entitled, which must be reasonable.[5] "Once a prevailing party establishes its right to recover allowable costs, however, the burden shifts to the 'non-prevailing party to overcome' the presumption that these costs will be taxed."[6]

Transcript and copy costs under § 1920(2) and (4) must be "necessarily obtained for use in the case." Under this standard, the materials must be "reasonably necessary to the litigation of the case."[7] These costs are not recoverable if they "merely 'added to the convenience of counsel' or the district court."[8] "Materials produced 'solely for discovery' do not meet this threshold."[9] However, the Tenth Circuit acknowledges that materials may still be taxable even if they are not "strictly essential" to the Court's "resolution of the case."[10] If a transcript or copy was "offered into evidence," was "not frivolous," and was "within the bounds of advocacy," then

---

[4] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th Cir. 2002).

[5] *In re Williams Sec. Litig.-WCG Subclass*, 588 F.3d 1144, 1148 (10th Cir. 2009).

[6] *Id.* (citation omitted).

[7] *Id.* (quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1204 (10th Cir. 2000)).

[8] *Id.* at 1147 (quoting *U.S. Indus., Inc. v. Touche Ross & Co*, 854 F.2d 1223, 1245 (10th Cir. 1988)).

[9] *Id.* at 1148 (quoting *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1550 (10th Cir. 1987)).

[10] *Id.* (quoting *Furr*, 824 F.2d at 1550).

costs may be appropriately taxed.[11] The Court evaluates the reasonableness of the expense at the time it was incurred.[12] Thus, "[i]f 'materials or services are reasonably necessary for use in the case,' even if they are ultimately not used to dispose of the matter, the district court 'can find necessity and award the recovery of costs.'"[13]

## II.     Discussion

VMR objects to the Clerk's award of costs on the following grounds: (1) Mitchell failed to make reasonable efforts with opposing counsel to resolve their disputes before filing the Bill of Costs; (2) transcript fees associated with John Tagliapietra's personal bankruptcy were not necessarily obtained for use in the case; (2) daily trial transcripts were not necessarily obtained for use in the case; (3) copies related to Mr. Tagliapietra's personal bankruptcy were not necessarily obtained for use in the case; (4) copies related to Mr. Tagliapietra's felony conviction were not necessarily obtained for use in the case; (5) internal copying costs were not detailed enough to determine whether they meet the reasonably necessary standard; and (6) most of the costs associated with Mitchell's e-discovery are not allowable copy costs under § 1920(4).  The Court addresses each in turn.

### A.     Consultation Requirement

Local Rule 54.1(a) requires the party who files a memorandum in support of a bill of costs to, *inter alia*, "state that the party has made a reasonable effort, in conference with opposing counsel or pro se party, to resolve disputes regarding costs."  VMR complains that Mitchell did not provide it with enough time to review its costs request to allow any meaningful consultation.  The parties do not dispute that Mitchell's counsel called and left a voicemail for

---

[11]*Id.* (quoting *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340 (10th Cir. 1998)).

[12]*Id.*

[13]*Id.* (quoting *Callicrate*, 139 F.3d at 1339).

VMR's counsel on the same day that its bill of costs was due, and then followed up with an e-mail to VMR's counsel itemizing the costs it planned to seek. Plaintiff's counsel did not respond by phone, but by e-mail replied: "Not much notice. Cannot adequately respond. Certainly no stipulation."[14] Mitchell included the requisite statement in its memorandum in support of a bill of costs that it made a reasonable effort, in conference with opposing counsel, to resolve disputes regarding costs.

Although the Court agrees that Mitchell could have made a greater effort at meaningful consultation, it is not prepared to conclude that Mitchell has forfeited its right to recover reasonable costs on this basis. And given the positions of the parties as stated in the briefing on this motion, the Court is not convinced that greater consultation would have made any difference in this case. Mitchell has met the requirement in the local rule that its memorandum include a statement that it has made a reasonable effort to confer in order to resolve the dispute.[15]

### B. Transcripts "Necessarily Obtained for Use in the Case"

#### 1. Bankruptcy Case Transcripts

The Court decided two rounds of summary judgment motions in this matter. In the first round of summary judgment, Mitchell raised the affirmative defense of judicial estoppel. Mitchell argued that VMR should be judicially estopped from recovering in this case because VMR's sole shareholder, John Tagliapietra, failed to disclose the potential value of his VMR stock during the course of his personal bankruptcy proceedings based on the unpaid royalties that form the basis of VMR's damages in this case. After conducting a hearing, the Court granted

---

[14]Doc. 241-2 at 2 (Def. Ex. G).

[15]VMR's reliance on *Lintz v. American General Finance, Inc.* is misplaced. 7 F. Supp. 2d 1161, 1164 (D. Kan. 2000). That case discusses the consultation requirement under Local Rule 54.2, which governs consultation for attorney fee awards, not costs. The consultation requirement in Rule 54.2 is more extensive. *Compare* D. Kan. R. 54.2(a)–(d) *with* D. Kan. R. 54.1(a)(2)(D).

Mitchell's motion on the sole basis of judicial estoppel; it did not reach the merits of the contract claims. On appeal, the Tenth Circuit Court of Appeals reversed this Court's summary judgment ruling on judicial estoppel, and remanded the case for further proceedings. On remand, this Court denied the parties' cross-motions for summary judgment on the merits of VMR's contract claims and the case proceeded to trial.

Plaintiff now argues that the cost of obtaining transcripts of creditors' meetings from Mr. Tagliapietra's personal bankruptcy case is not taxable because Mitchell was ultimately unsuccessful on its judicial estoppel affirmative defense. The Court disagrees. As set forth above, the appropriate standard is not whether or not Mitchell was ultimately successful on its affirmative defense. The question is instead whether the cost of obtaining the bankruptcy transcripts was "reasonably necessary to the litigation of the case." The Court finds that it was. The parties already litigated whether Tagliapietra's statements during the bankrtupcy proceeding could be used as impeachment in the trial in this matter if he testified about the valuation of VMR. The Court allowed this evidence to be used at trial as impeachment, and the Tenth Circuit affirmed this Court's ruling.[16] Mitchell indeed used these transcripts as impeachment during Mr.Tagliapietra's cross-examination. Such use was not frivolous, and was certainly within the bounds of advocacy. The Court finds that irrespective of the judicial estoppel defense, at the time they were obtained, the bankruptcy case transcripts were reasonably necessary to the litigation.

### 2. Daily Trial Transcripts

Next, Plaintiff objects to the costs associated with Mitchell's use of expedited daily trial transcripts. In this District, judges have found such costs taxable where the case is "'sufficiently

---

[16] 839 F.3d 1251, 1257 (10th Cir. 2016).

lengthy, complex, and contentious' thus making 'the cost of a daily transcript reasonably necessary.'"[17] This was a case involving two claims under Kansas law: (1) breach of contract, and (2) breach of the duty of good faith and fair dealing. The elements of such claims are straightforward, not complex. The case was tried over seven days, not a lengthy period of time. And although counsel zealously advocated for their clients, the Court cannot find that their contentiousness went beyond the typical level of advocacy in a case of this nature. Mitchell contends that the daily transcripts were necessary for it to cross-examine certain witnesses whose testimony spanned over more than one day, and to impeach one witness about certain untruthful statements made on his first day of testimony. But the Court is not persuaded that a daily transcript is necessary in order to impeach under such circumstances. Of course, the daily transcripts were helpful, and of course counsel utilized them. But the Court cannot find that such use translates into necessity. Instead, they were obtained for the convenience of counsel. Therefore, the Court sustains VMR's objection to the Clerk's award of $2,010.15 for daily trial transcripts.

    **C.    Copies**

        **1.    Copies Related to Tagliapietra's Bankruptcy Case and Felony Conviction**

As already discussed, the Court finds that records about Tagliapietra's representations during his personal bankruptcy proceeding were reasonably necessary to the litigation under the applicable standards. Therefore, VMR's objection to these copy costs must be denied for the same reason as the objection to transcript costs.

---

[17]*AgJunction LLC v. Agrian, Inc.*, No. 14-CV-2069-DDC-KGS, 2016 WL 3031088, at *4 (D. Kan. May 27, 2016) (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1079 (D. Kan. 2005)).

VMR also objects to the costs taxed for copies of documents associated with Mr. Tagliapietra's twenty-five-year-old felony conviction because it was deemed inadmissible under Fed. R. Evid. 609(b). Again, VMR misapplies the standard for taxing costs under this provision. The Court does not evaluate whether the evidence is ultimately admissible; it looks to whether the cost was reasonably necessary at the time it was incurred. Mitchell explains that during Tagliapietra's June 11, 2010 deposition, he disclosed that he had previously been convicted of a felony, but declined to provide any details about the circumstances surrounding the conviction. Given this, the Court easily finds that Plaintiff has fulfilled its burden of showing that in September 2010, when this copy expense was incurred, obtaining copies of these records was "reasonably necessary for use in the case." VMR has not rebutted the presumption that these costs should be taxed, thus VMR's objection as to these costs is denied.

### 2. Internal Copy Costs

VMR objects to copy costs in the amount of $1071.61, on the grounds that Mitchell did not provide enough detail about them, and that they represent internal copy costs incurred out of convenience and not necessity. But in its brief in support of the bill of costs, Mitchell provided a detailed summary and description chart about its copy requests in order to demonstrate necessity. Mitchell also provided detailed invoices in support of its request. Most of these copy costs involved preparing trial and deposition exhibits. Mitchell sufficiently documented its basis for claiming necessity, unlike in the cases cited by VMR—*Odessa Ford, LLC v. T.E.N. Investments, Inc.*,[18] and *Treaster v. HealthSouth Corp.*[19] The Court has reviewed Mitchell's brief in support

---

[18] No. 07-2161-KHV, 2009 WL 1631850, at *5 (D. Kan. June 10, 2009) (denying copy costs where the moving party did "not explain whether or how any of these 1,022 pages were reasonably necessary to its case. Absent a more detailed accounting or explanation, the Court cannot find that these expenses were incurred for anything more than the curiosity or convenience of counsel").

[19] 505 F. Supp. 2d 898, 905 (D. Kan. 2007) ("[T]he record does not disclose the nature of the materials copied and therefore defendant has not shown that these copies were reasonably necessary to preparation of his

of its bill of costs, as well as its invoices, and concludes that these copy costs meet the applicable "reasonably necessary" standard. VMR's objection to "the balance" of copy costs is denied.

### 3. Electronic Discovery

Finally, VMR objects to most of the costs sought by Mitchell related to electronic discovery ("e-discovery"). The Tenth Circuit Court of Appeals has not yet determined whether e-discovery costs are recoverable under the 2008 amended version of § 1920(4).[20] The leading circuit court case on this issue is the Third Circuit's decision in *Race Tires America, Inc. v. Hoosier Tire Corp.*[21] The Third Circuit determined that e-discovery did not qualify as "exemplification" under the cost statute, but that some e-discovery charges constitute "making copies," under § 1920(4).[22] In order to determine which charges constitute "making copies," the Third Circuit identified the following categories of e-discovery services: "collecting and preserving ESI; processing and indexing ESI; keyword searching of ESI for responsive and privileged documents; converting native files to TIFF; and scanning paper documents to create electronic images."[23] The court found no statutory authority for the recovery of all e-discovery services "to the ultimate act of production of intelligible electronic documents."[24] The statute, it held, "does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional" nor does it "say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of

---

case."); *see also AgJunction*, 2016 WL 3031088, at *6 (recognizing that the moving party is not required to itemize every photocopy).

[20]The Tenth Circuit did hold pre-Amendment that it was not an abuse of discretion for a district court to tax costs for imaging documents stored on an internal data management server. *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1371, 1476 (10th Cir. 1997).

[21]674 F.3d 158 (3d Cir. 2012).

[22]*Id.* at 166, 171–72.

[23]*Id.* at 167.

[24]*Id.* at 168.

making copies."[25] The court found that the cost statute allows recovery only for scanning hard copy documents, converting native files to TIFF, and transferring VHS tapes to DVD.[26]

Other circuit courts have followed the *Race Tires* decision and opted to interpret the meaning of "making copies" narrowly, although some have allowed some additional costs to be taxed.[27] District courts within the Tenth Circuit likewise have followed these circuit court precedents and adopted a narrow reading of the statute as applied to e-discovery.[28] In this district, Judge Crabtree recently predicted that the Tenth Circuit would "follow the lead of other circuits and allow a prevailing party to recover expenses for copying and exemplifying electronic discovery materials, both for production in discovery or for use at trial, as taxable costs under § 1920(4) if 'necessarily obtained for use in the case.'"[29] This Court agrees.

VMR does not object to Mitchell's request for costs paid to one of the two outside vendors it utilized to scan documents and convert them into TIFF format.[30] It argues that these

---

[25]*Id.* at 169.

[26]*Id.* at 171.

[27]*Country Vintner of N.C., LLC v. E.& J. Gallo Winery, Inc.*, 718 F.3d 259, 260 (4th Cir. 2013) (following *Race Tires*); *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328–35 (Fed. Cir. 2013) (allowing costs for converting electronic files to non-editable formats, scanning paper documents, creating load files if they contain information required by the requested production, and copying responsive documents to production media; and disallowing costs for preparing to copy, keyword searching, auditing and logging files, and extracting proprietary data); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 930–32 (9th Cir. 2015) (allowing costs for optical character recognition, converting documents to TIFF, and "endorsing" activities; disallowing costs for application of automated software filtering processes); *Colosi v. Jones Lang LaSalle Ams., Inc.*, 781 F.3d 293, 297–98 (6th Cir. 2015) (finding *Race Tires* construction of the statute "overly restrictive" as applied to imaging a hard drive).

[28]*See, e.g.*, *Nero v. Am. Family Mut. Ins. Co*, No. 11-CV-02717-PAB-MJW, 2013 WL 5323262, at *1–3 (D. Colo. Sept. 23, 2013) (applying *Race Tires* and allowing costs in the amount spent on loading data into an electronic database and converting files to TIFF or PDF formats); *Phillip M. Adams & Assocs., LLC v. Sony Elecs. Inc.*, No. 1:05-CV-64 TS, 2013 WL 5964288, at *4–5 (D. Utah Nov. 7, 2013) (following *Race Tires* and *Country Vintner*, and allowing costs for TIFF imaging and copying material onto CDs and DVDs).

[29]*AgJunction LLC v. Agrian, Inc.*, No. 14-CV-2069-DDC-KGS, 2016 WL 3031088, at *9 (D. Kan. May 27, 2016).

[30]*See* Doc. 239-5 at 1. VMR does not object to the costs charged by Capital Legal Solutions in the amount of $9,378.93. The tasks performed by Capital Legal Solutions include "Electronic document conversion to Tiff and creation of litigation database with metadata, text, OCR, and group IV tiff documents; processed data and delivered Tiff Concordance load."

are recoverable costs under *Race Tires*.[31] VMR does object to $38,346.88 of Mitchell's costs incurred for e-discovery data processing and loading services provided by counsel's own in-house technology personnel. It further objects to $24,881.93 of Mitchell's e-discovery costs involving data processing and loading services provided by outside vendors, which VMR maintains are "nothing more than extensive 'processing' of ESI material," incurred solely to discharge discovery obligations. Neither party provides the Court with specific guidance about the numerous charges within the billing records from defense counsel and invoices from outside vendors. VMR states in a conclusory fashion that these materials were "produced solely for internal use or the convenience of counsel in conducting discovery," making them nonrecoverable.[32] Mitchell takes the sweeping position that any e-discovery charges that could be construed as "processing" should be recoverable, relying on Judge Crabtree's *AgJunction* decision.

The Court does not agree with Mitchell that *AgJunction* stands for the proposition that all costs that could be categorized as ESI "processing" are recoverable under the cost statute. In that case, after predicting that the Tenth Circuit would follow the lead of the other circuit courts that have discussed this issue in great depth, Judge Crabtree addressed the two main objections to the cost award in that case: that copying software code and digital devices are not recoverable.[33] As to the first issue, the court found that copying the software code was necessarily incurred in the litigation.[34] As to the second issue, the court determined that imaging digital devices for use in the case constitutes "making copies."[35] On this second issue, the court relied on the Sixth

---

[31]*See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 172 (3d Cir. 2012).

[32]*Colosi*, 781 F.3d at 297.

[33]*AgJunction*, 2016 WL 3031088, at *9–10.

[34]*Id.* at *9.

[35]*Id.* at *10.

Circuit's decision in *Colosi*, which addressed the limited question of whether imaging a hard drive is a compensable cost.[36] Neither issue is before the Court in this case. Instead, Mitchell relies on language at the end of Judge Crabtree's lengthy opinion, which addressed objections to some of the specific charges in the outside vendor's invoices. Judge Crabtree stated: "The Court has reviewed the invoices and determines that the entries describing the 'collection,' 'evaluation,' 'processing,' and 'production' of ESI amount to taxable 'copying' charges under § 1920(4)."[37] He then explained that charges for preparing for the copying process are not taxable.[38]

Contrary to Mitchell's view, *AgJunction* explicitly predicted that the Tenth Circuit would follow the lead of the other circuit courts that have considered this issue, which have refused to endorse an interpretation of the statute that all costs associated with the collection and production of ESI are recoverable. Within the document production "process" are many stages, and there are many tasks within each stage.[39] Some are compensable and some are not. Plaintiff has not met its burden of demonstrating that each of the entries on its billing records constitute copy costs.

Like Judge Crabtree, this Court predicts that the Tenth Circuit will follow the circuit courts to consider this issue and interpret the cost statute narrowly. Under these cases, costs are allowed for scanning hard copy documents, converting native files to TIFF, transferring VHS tapes to DVD, creating load files if they contain information required by the requested production, optical character recognition, endorsing activities, and imaging devices, so long as

---

[36]*Id.* (discussing *Colosi*, 781 F.3d at 297–98).

[37]*Id.* (citing *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1330 (Fed. Cir. 2013)).

[38]*Id.*

[39]*See, e.g.*, *CBT Flint*, 737 F.3d at 1330 (breaking the process into three stages, and discussing the tasks involved with each stage).

these activities are necessarily obtained for use in the case.[40] In contrast, "preparation" of materials for copying does not qualify as "making copies."[41] Also, tasks related to the document-review process, such as searching, filtering, and creating a privilege log, are not recoverable even though they may relate to the copying process.[42] Deduplication, although helpful in making the process more efficient, is not part of the process of "making copies."[43] Likewise, discussions with counsel and other litigation-support staff are clearly not compensable as copy costs.

This Court has reviewed the billing records and invoices in this case and found several entries of time spent on the aforementioned noncompensable tasks. Mitchell requested extensive costs for preparing documents for electronic copying, document review activities, filtering and creating keyword searches, tasks related to creating privilege logs, and for discussing e-discovery issues with other legal professionals. It is exceedingly difficult to determine the costs associated with some of the specific e-discovery tasks listed on counsel's internal billing records because they are block-billed.[44] However, the Court has identified $10,878.23 in charges that are wholly noncompensable in Mitchell's Exhibit D. The Court has further identified $8,279.25 in charges that include both compensable and noncompensable time. The Court reduces these costs by 50%. The outside vendor's invoices in Exhibit E are not block billed, and are thus easier to

---

[40]*See supra* note 28.

[41]*AgJunction*, 2016 WL 3031088, at *9–10 (citing *CBT Flint*, 737 F.3d at 1330).

[42]*CBT Flint*, 737 F.3d at 1330 ("A litigant faced with what it views as overbroad discovery requests or vexatious discovery tactics—or even unduly fruitless or burdensome negotiations over discovery obligations—must pursue relief by other means, such as seeking court orders to limit the discovery when the problems arise or seeking reimbursement of costs or fees or payment of penalties afterwards under authority other than section 1920(4).").

[43]*Id.*

[44]*See, e.g.*, Doc. 239-4 at 5 ("discussion with R. Zieben re using search terms to prepare documents for production; Upload client document production . . . ; update data retrieval database . . . ; discussion with R. Zieben and T. Macrae re fields to produce."); Doc. 239-4 at 7 ("Prepare PDF files from tagged documents per E.Doi; upload PDF files to E. Doi and C. Torres v. SFTP"); ("Uploaded PDF files . . . discussion with T. Casteller re printing project specifications").

decipher. The Court has identified $9,224 in noncompensable costs charged by Teris for "search term/word filtering" activities. The Court therefore grants VMR's objection to the Clerk's award of costs for the entire sum of e-discovery services requested by Mitchell. Mitchell's e-discovery costs are reduced by $24,241.86.

**IT IS THEREFORE ORDERED BY THE COURT** that VMR's Motion to Retax Costs (Doc. 244) is **granted in part and denied in part**. The motion is granted as to the following: (a) $2,010.15 in costs for daily trial transcripts; and (b) $24,241.86 in charges for e-discovery data processing that does not qualify as "making copies" under the statute. The motion to retax costs is otherwise denied, and the Court finds that the remaining $66,882.77 of costs taxed by the Clerk are allowable. The Clerk shall retax costs in the reduced amount of $66,882.77.

**IT IS SO ORDERED.**

Dated: June 26, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE